# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

STATE OF WASHINGTON,

Respondent,

v.

DESTRY KEITH VELASQUEZ,

Appellant.

No. 60573-2-II

UNPUBLISHED OPINION

VELJACIC, C.J. — Destry K. Velasquez appeals his unlawful possession of a firearm in the first degree conviction. He contends that the State failed to prove that he knowingly possessed the firearm found on the backseat of the vehicle he was driving. We affirm Velasquez's conviction.

FACTS

I.    BACKGROUND FACTS

Police were attempting to locate Velasquez to serve a bench warrant regarding a recent shooting. They had information linking him to a black Jeep. Police observed Velasquez enter the driver's side of a black Jeep at a park. After he noticed the police, Velasquez took off, leading them on a high-speed chase. Velasquez eventually crashed into a fire hydrant and was arrested.

During the search of the vehicle, officers discovered an AK-47 rifle wrapped in a blanket on the back seat. They also found a 9-mm firearm magazine and a red dot sight in the driver's side door panel. An additional 9-mm magazine was recovered from the vehicle's center console.

The Jeep was registered to Velasquez's girlfriend, Jessica Stewart, who was a passenger in the vehicle. A credit card in Velasquez's name was located inside the Jeep, along with credit cards in Stewart's name. Police also located men's shoes inside the vehicle.

II.    CHARGES

The State charged Velasquez with unlawful possession of a firearm in the first degree[1] and attempting to elude a pursuing police vehicle. The State also charged Velasquez with assault in the first degree and another count of unlawful possession of a firearm in the first degree relating to the earlier shooting, but the State later dismissed these charges.

III.    TRIAL

Pierce County Sheriff's Deputy Jason Bray testified that he noticed a black Jeep in a park parking lot. Police were looking for the Jeep because it was associated with Velasquez and there was a warrant for his arrest involving a recent shooting. Bray observed Velasquez exit through the Jeep's driver's door, walk to the rear of the vehicle, and then return to the driver's seat. Bray testified that he was familiar with Velasquez and saw him driving the Jeep, alone, on two separate occasions within the last few months.

Pierce County Sheriff's Deputy Christopher Olson oversaw the search of the Jeep. He testified that police located an AK-47 with a high-capacity drum magazine attached containing 68 rounds of ammunition wrapped in a blanket on the back seat. Olson also testified that the firearm could be accessed from the front seat by reaching back—there was no barrier blocking access.

Police also located a 9-mm firearm magazine and a red dot sight for a firearm in the driver's side door panel of the Jeep. The magazine was loaded with nine rounds. Olson testified that the red dot sight attaches to a rifle or handgun and places a red dot on a target.

---

[1] This charge was based, in part, on Velasquez's stipulated prior conviction for a serious offense.

Olson also testified that police located a Glock 9-mm magazine with 13 rounds of ammunition and a single rifle round in the center console of the Jeep. He testified that the rifle round could be used in the AK-47 rifle found on the back seat. Police also found credit cards in both Velasquez's and Stewart's names. Men's sneakers size nine-and-a-half were also found in the back of the Jeep.

Department of Correction's Community Corrections Specialist Amanda Tuttle, who assisted with locating Velasquez, testified that she saw Velasquez in the driver's seat of the Jeep. She testified that she observed an item wrapped in a blanket directly in-between the driver and the passenger seat in the back. She touched the blanket, felt the drum magazine, and realized it was a firearm. Tuttle testified that a person could access the rifle from the driver seat and the front passenger seat.

Tuttle testified that it appeared someone had wrapped the firearm in a blanket and put it in the backseat to keep it "out of sight." 3 Rep. of Proc. (RP) at 1044. Tuttle did not know who wrapped the blanket around the firearm or when it was placed in the vehicle. Tuttle testified when she first saw the blanket she did not realize a firearm was inside.

IV.     VERDICT

The jury found Velasquez guilty of unlawful possession of a firearm in the first degree and attempting to elude a pursuing police officer. He appeals.

ANALYSIS

Velasquez contends that the State failed to prove that he knowingly possessed the firearm found on the back seat of the vehicle. Velasquez concedes that he had a prior serious offense rendering his possession unlawful and that, as the vehicle's driver, he constructively possessed the

firearm. He focuses his argument on alleging that the State failed to prove that he knew the AK-47 was in the vehicle. We disagree.

We review challenges to the sufficiency of the evidence de novo. *State v. Berg*, 181 Wn.2d 857, 867, 337 P.3d 310 (2014). Evidence to support a conviction is sufficient if, when viewing the evidence in the light most favorable to the State, any rational trier of fact could find guilt beyond a reasonable doubt. *State v. Bergstrom*, 199 Wn.2d 23, 40-41, 502 P.3d 837 (2022). In arguing that the evidence is insufficient, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id*. at 41.

Circumstantial evidence is considered as reliable as direct evidence. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). We defer to the jury on questions of witness credibility, persuasiveness of the evidence, and conflicting testimony. *In re Pers. Restraint of Arntsen*, 2 Wn.3d 716, 724, 543 P.3d 821 (2024).

RCW 9.41.040(1)(a)(i)[2] states that "[a] person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree[,] . . . [i]f the person . . . possess[es] . . . any firearm after having previously been convicted . . . of any serious offense." Velasquez does not dispute that he had previously been convicted of a serious offense. To be guilty of unlawful possession of a firearm, possession must be "knowing." *State v. Anderson*, 141 Wn.2d 357, 366, 5 P.3d 1247 (2000).

As it applies to this case, "knowingly," means that a person has "information which would lead a reasonable person in the same situation to believe" that they were in possession of the firearm. RCW 9A.08.010(1)(b)(ii). Evidence establishing knowing possession can include the defendant's control over premises where the firearm was found, along with the presence of

---

[2] We cite the current statute as the relevant language has not changed.

personal effects and testimony establishing occupancy. *State v. Warfield*, 119 Wn. App. 871, 884-85, 80 P.3d 625 (2003). The State may also rely on circumstantial evidence demonstrating the defendant's awareness of the firearm's presence. *Id*. at 885.

Here, Velasquez was driving the Jeep on the day the firearm was discovered. There was testimony that he had been driving the jeep on two prior occasions within the last few months And police found Velasquez's credit card and a pair of men's shoes inside the vehicle. These facts demonstrate his dominion and control over the vehicle where the firearm was found.

Police also located several firearm accessories, including a red dot sight for a rifle in the driver's side door panel of the Jeep, close to where Velasquez was seated. Additionally, police found a round that could be used in a rifle close to where Velasquez was seated, in the center console of the Jeep. Circumstantial evidence is as reliable as direct evidence in establishing knowledge. *Cardenas-Flores*, 189 Wn.2d at 266.

Velasquez also led police on a high-speed chase. This demonstrates avoidance of capture because he knew the firearm was in the vehicle. Additionally, Tuttle testified that it appeared someone had wrapped the firearm in a blanket and put it in the back seat to keep it "out of sight." 3 RP at 1044. Velasquez was prohibited from possessing firearms by virtue of a prior conviction. Knowing one is disallowed from firearm possession would lead that person, here Velasquez, to hide the firearm by wrapping it in a blanket.

While Tuttle testified that she did not immediately know there was a firearm under the blanket when looking in the back seat, the firearm was recognizable as a weapon when touched. And there was testimony that the firearm was within Velasquez's touch. We defer to the jury on the persuasiveness of evidence. *Arntsen*, 2 Wn.3d at 724.

Considering the evidence in the light most favorable to the State, a rational trier of fact could determine that Velasquez knowingly possessed the firearm on the back seat.

CONCLUSION

We hold that sufficient evidence supports Velasquez's unlawful possession of a firearm in the first degree conviction. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, C.J.

We concur:

Lee, J.

Cruser, J.